IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | 12-cv-1592 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner James Mitchell ("Mitchell") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his state criminal convictions for first degree murder and home invasion. Mitchell advances several grounds for habeas relief: insufficient evidence for conviction; failure to give appropriate jury instructions; misapplication of a firearm sentencing enhancement; ineffective assistance of trial counsel; and actual innocence. Tarry Williams ("Respondent"), Warden of the Stateville Correctional Center, argues that Petitioner's claims are meritless, non-cognizable, or procedurally defaulted. For the reasons set forth herein, the Court denies the petition.

---

[1] The Court substitutes Tarry Williams for the original named Defendant, Marcus Hardy. Rule 2(a) of the rules governing Section 2254 habeas cases provides that the proper party respondent brought by a incarcerated petitioner is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Tarry Williams replaced Marcus Hardy as Warden of Stateville Correctional Center. Accordingly, the Court substitutes him as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

# **Factual Background**[2]

A jury convicted Mitchell of home invasion and the first degree murder of Brian Campbell on an accountability theory. *See People v. Mitchell*, No. 1-05-1114, slip. op. 1–2 (Ill. App. Ct. 2007). The facts underlying the convictions are as follows.

Campbell and his fiancée, Ninner Powers, lived in a two-flat apartment on the second story. *See id.* 2. At 8:30 p.m. on the evening of May 8, 2002, Powers was talking to a friend on the porch of her home. *See id.* Campbell was upstairs in the apartment. *See id.* Powers' friend left, and Powers went inside and attempted to close the door, when Mitchell and two other people, Marcel White and Christopher Peoples, forced their way into the home. *See id.*

Mitchell, White, and Peoples informed Powers that they had learned she and Campbell were selling drugs for a rival gang and that they wanted the drugs and the money from the sales. *See id.* Powers denied these accusations, but White persisted, saying he was going to go get the money himself. *See id.* 2–3. White pushed Powers aside and proceeded up the stairs, followed by Peoples. *See id.* 3. Powers followed the two men, and in turn Mitchell followed Powers. *See id.*

Powers tried to prove to the men, by showing them a bond slip, that she had been in jail the night before and had only been released that morning. *See id.* Mitchell asked if Powers was willing to "face" the person who had accused her of the

---

[2]     Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in habeas proceedings. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Mitchell has not attempted to rebut the presumption with clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in *People v. Mitchell*, No. 1-05-1114, slip. op at 1–5 (Ill. App. Ct. 2007)

drug sales. *See id.* White stated that Powers was "probably lying," and Mitchell retorted that he did not think Campbell was involved in drug sales. *See id.* Nevertheless, Mitchell told Peoples to shoot Powers to show the other gang that they "meant business." *See id.*

Peoples took a pistol from his coat and pointed it at Powers. *See id.* At that moment, Campbell approached the group, and Peoples shot Campbell three or four times. *See id.* Peoples then aimed the pistol at Powers' head and pulled the trigger, but the gun did not discharge. *See id.* Powers, in turn, picked up a revolver and tried to shoot the men. *See id.* Mitchell, Peoples, and White ran out of the apartment and down the street. *See id.*

Officer William Harnedy of the Chicago Police Department interviewed Powers at her apartment after the shooting. *See id.* Powers indicated she did not know which direction the men had ran and did not tell Officer Harnedy about the conversation in the hallway where the men had threatened to shoot her before shooting Campbell. *See id.* Powers did identify Mitchell and White in police photographs and later identified Peoples as the gunman. *See id.*

On May 17, 2003, Mitchell was arrested pursuant to a warrant and was questioned by Detective Daniel McNally, Mitchell initially denied any knowledge of Campbell's murder. *See id.* 3–4. After Mitchell was told that White and Peoples had also been arrested, however, he said he knew what Detective McNally was talking about. *See id.* 4. He indicated that it involved Powers' husband, but

Mitchell denied participating in the shooting, claiming he was at his grandfather's house the night of the shooting. *See id.*

Officer John Halloran questioned Mitchell after McNally. *See id.* At first, Mitchell maintained his noninvolvement. He claimed that he had met White and Peoples on Powers' porch that night, but insisted he left before shots were fired, went to his grandfather's house, and took a bus to Minnesota the next day. *See id.* When Officer Halloran told Mitchell that White and Peoples had implicated him, Mitchell altered his story. *See id.* Mitchell then claimed that on the night in question he ran into White and a man named Harper, who told him that Powers sold drugs from her apartment for a rival gang. *See id.* White told Mitchell that Powers owed him money, and Mitchell agreed to help him get the money. *See id.* White told Mitchell he was going to "f*** Powers up" if she did not have his money. *See id.*

Mitchell then told Officer Halloran that he went with White and Peoples to Powers' apartment and Powers let them in because she did not want the police to see her loitering on her front porch with multiple people. *See id.* Mitchell maintained that only Peoples went upstairs and, after shots were fired, he fled with White and Peoples. *See id.* Officer Halloran then told Mitchell he knew Mitchell belonged to a gang that was a rival to Powers' gang. *See id.* 4–5.

At trial, Powers and the police officers testified to the above facts. The defendant presented no testimony. *See id.* 5. The court instructed the jury on the legal theory of accountability. *See id.* The jury then convicted Mitchell of both first

degree murder and home invasion. *See id.* Mitchell was sentenced to a term of forty-five years for the first degree murder, to which fifteen years was added under an sentencing enhancement for firearms crimes. *See id.* 1. Mitchell was also sentenced to a consecutive term of ten years for home invasion. *See id.*

## Direct Appeal

On direct appeal, Mitchell raised three claims: (1) the State had failed to prove him guilty beyond a reasonable doubt; (2) the trial court failed to afford him a fair trial when it failed to define the term "dwelling place" as an element of the crime of home invasion; and (3) the trial court erred when it applied the firearm enhancement in sentencing. *See* Resp't's Answer, Ex. B, Opening Brief for Defendant Appellant, *People v. Mitchell*, No. 03 CR 12481(03), i–ii (Ill. App. Ct. 2006). The Illinois appellate court affirmed Mitchell's conviction and sentence. *See generally id.*, Ex. A, *People v. Mitchell*, No. 1-05-1114 (Ill. App. Ct. 2007). Mitchell then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court raising these same three claims. *See* Resp't's Answer, Ex. E, Defendant-Appellant's Direct Appeal PLA, 12–18. The Illinois Supreme Court denied the PLA on January 30, 2008. *See id.*, Ex. F, Order Denying PLA, *People v. Mitchell*, No. 105676 (Ill. 2008).

## Post-Conviction Proceedings

On July 23, 2008, Mitchell, proceeding *pro se*, filed a post-conviction petition in state trial court. *See generally* Resp't's Answer, Ex. G, Pro Se Post-conviction Petition, *People v. Mitchell*, Case No. 03-CR-12481 (03). Mitchell raised three

claims: (1) his trial counsel rendered ineffective assistance by failing to file a motion to suppress statements Mitchell had made to Halloran and McNally in violation of his rights against self-incrimination; (2) his trial counsel rendered ineffective assistance by failing to preserve error that Mitchell was not proven guilty beyond a reasonable doubt; and (3) Mitchell was actually innocent. *See id.* at 2. The state trial court found his claims frivolous and without merit. *See id.*, Ex. I, Order, *People v. Mitchell*, No. 03 CR 12481 (Cir. Ct. Cook Cty.)

The only claim Mitchell raised on appeal to the Illinois appellate court was his actual innocence claim. *See id.*, Ex. K, Petitioner's Postconviction Petition, *People v. Mitchell*, No. 03 CR 12481 (Cir. Ct. Cook County). Mitchell argued that he was actually innocent based on an affidavit submitted by Powers recanting her testimony that Mitchell had told Peoples to shoot Powers. The Illinois appellate court rejected this argument. *See id.*, Ex. J, Order, *People v. Mitchell*, No. 1-09-1053, 7–10 (Ill. App. Ct. 2011). In his subsequent PLA to the Illinois Supreme Court, Mitchell presented all three claims he raised in the trial court. *See id.*, Ex. N, Postconviction Appeal PLA, *People v. Mitchell*, No. 1-09-1053. The Illinois Supreme Court denied Mitchell's post-conviction PLA on September 28, 2011. *See id.*, Ex. O, Order Denying Postconvicition Appeal PLA, *People v. Mitchell*, No. 112212 (Ill. 2011).

**Federal Habeas Claims**

After reviewing the habeas petition, the Court finds that Mitchell has presented the following claims:

**Claim One:** The State did not present sufficient evidence to convict Mitchell beyond a reasonable doubt because the evidence did not support Mitchell's guilt under an accountability theory.

**Claim Two:** The trial court denied Mitchell his right to a fair and impartial jury trial when it gave the jury a definition of "dwelling place" for purposes of the home invasion charge that was not the definition contained in Illinois Pattern Jury instructions, thereby improperly deciding a fact which should have been left to the jury.

**Claim Three:**[3] The trial court erred in applying a Illinois firearms sentencing enhancement, 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(d)(i), to add fifteen years to Mitchell's sentence, because the jury found him guilty under an accountability theory and therefore did not actually find that he was armed.

**Claim Four:**[4] Trial counsel rendered ineffective assistance by failing to: **(a)** file a motion to suppress the statements Mitchell made to Officer Halloran and Detective McNally in violation of his *Miranda* rights; and **(b)** preserve the issue at trial of the State's failure to prove Mitchell's guilt beyond a reasonable doubt.

**Claim Five:** Mitchell is actually innocent based on a new affidavit submitted by trial court witness Ninner Powers recanting her testimony in part.

*See generally* Pet'r's Pet. 5–7, 9–17.

## Analysis

### A.    Claim One

Mitchell's first claim is that the State did not present evidence sufficient to convict him beyond a reasonable doubt.    Under AEDPA, a federal court "deferentially review[s] the decision of the last state court to address [petitioner's]

---

[3]    The Court has collapsed Mitchell's original Grounds Three and Grounds Four because they both challenge the trial court's application of a firearms sentencing enhancement under Illinois law to increase Mitchell's sentence by fifteen years. *Compare* Pet'r's Pet. 6 (Grounds Three); *id.* (Grounds Four).

[4]    For simplicity, the Court has collapsed Mitchell's two ineffective assistance of trial counsel subclaims into one claim here. *Compare* Pet'r's Pet. 14 (Claim Five); Pet'r's Pet. 14 (Claim Six).

claims on the merits." *Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012). A federal court may not grant habeas relief unless the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

As an initial matter, Mitchell rests a portion of his argument on an affidavit of Ninner Powers that was obtained after his trial and direct appeal. *See* Pet'r's Pet., Ex. A, Powers Affidavit. But Powers' affidavit was not in the record on direct appeal where Mitchell made his sufficiency of the evidence arguments and consequently cannot be considered by this Court on review. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").[5]

This leaves the remaining portion of Mitchell's claim that the State did not have sufficient evidence to convict him. Mitchell argues that the State did not present sufficient evidence to find that he went inside Powers' apartment or that he participated in the murder to extent required for conviction under an accountability theory. *See* Pet'r's Pet. 9. "Under the Due Process Clause, a defendant cannot be convicted unless the state proves all the elements of the crime beyond a reasonable doubt." *United States ex rel. Navarro v. Atchison*, --- F. Supp. 3d -----, No. 13 C 427,

---

[5]     Though Mitchell introduced Powers' affidavit in post-conviction hearings, he did so under an entirely different claim, adjudicated under different standards: actual innocence.

2014 WL 7476218, at *4 (N.D. Ill. Sept. 24, 2014) (citing *Jackson v. Virginia,* 443 U.S. 307, 316 (1979)). The Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. But "[t]he Court's role in reviewing such a claim is limited, and it may not reweigh the evidence or substitute its own judgment for that of the trier of fact." *Navarro,* --- F. Supp. 3d at ---, 2014 WL 7476218, at *4 (citing *Ford v. Ahitow,* 104 F.3d 926, 939 (7th Cir. 1997)).

First, the Illinois appellate court's adjudication of Mitchell's sufficiency claim was not contrary to federal law. "A state court's decision is 'contrary to' federal law if it applies the wrong standard or 'decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Morgan v. Calderone,* 355 Fed. App'x 53, 55 (7th Cir. 2009) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). Mitchell does not contend the state appellate court applied the wrong standard, nor does Mitchell point to any Supreme Court cases with materially indistinguishable facts that were decided differently. Accordingly, Mitchell has not established that the Illinois appellate court's ruling was contrary to federal law.

Nor was the Illinois appellate court's ruling an unreasonable application of *Jackson.* "Under the 'unreasonable application' of law clause, 'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Harris,* 680 F.3d at 948 (quoting

*Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "This means that the state court's application of law must have been objectively unreasonable." *Id.* (quotation omitted).

Mitchell raised his sufficiency of the evidence claim on direct appeal to the Illinois appellate court. In reviewing the Illinois appellate court's adjudication of this claim, the Court finds it comports with the due process requirements of *Jackson*. First, the Illinois appellate court correctly identified the guiding principles from *Jackson* and correctly cited *Jackson* and its standard. *See* Resp't's Answer, Ex. A, 5 (citing *Jackson*, 443 U.S. at 318–19). The court also outlined the elements necessary to establish liability on an accountability theory for murder under Illinois law. *See id.*, Ex. A, 6 (citing 720 Ill. Comp. Stat. 5/5-2(c) and *People v. Baugh*, 832 N.E.2d 903, 911 (Ill. App. 2005)). The Illinois appellate court then proceeded to review the evidence the State marshaled at trial against the elements of accountability for first degree murder.

The Illinois appellate court found that the evidence at trial could reasonably establish more than just Mitchell's mere presence at the scene of the crime. *See* Resp't's Answer, Ex. A, 6–8. In particular, the court found that there was sufficient evidence based on Mitchell's statements that he went with Peoples and White to Powers' apartment with a common purpose — to confront her about drug sales for a rival gang. *See id.*, Ex. A, 7. The court also pointed to Powers testimony that Mitchell told Campbell he should "pop her" to send a message to a rival gang. *See id.*, Ex. A, 7–8. The court found that there was evidence that Mitchell knew Peoples

had a gun. *See id.*, Ex. A, 8. Lastly, the court noted the evidence that Mitchell fled from the crime scene, a factor that can be indicative of guilt under Illinois law. *See id.* (citing *Smith*, 749 N.E. 2d 986, 989 (Ill. App. Ct. 2001)). Ultimately, based on the record before it, the Illinois appellate court reasonably applied *Jackson* to find that the evidence offered by the State was sufficient to establish Mitchell's accountability for Campbell's murder and that the conviction therefore did not violate Mitchell's due process rights. *See id.*

In addition to his general concern over the sufficiency of the State's evidentiary proffer, Mitchell argues that Ninner Powers gave inconsistent and conflicting testimony on examination and cross-examination. *See* Pet'r's Pet. 9. "A sufficiency of the evidence claim premised on witness credibility is particularly difficult to prove." *Navarro*, --- F. Supp. 3d at ---, 2014 WL 7476218, at \*5 (citing *McFowler v. Jaimet,* 349 F.3d 436, 456 (7th Cir. 2003)). "To find in favor of the petitioner on such a claim, the Court must determine not only that the witness was unreliable as a matter of law, 'but that no court could reasonably think otherwise.'" *Id.* (quoting *McFowler*, 349 F.3d at 456).

Mitchell did not present this specific argument on direct appeal. In his petition to this Court, Mitchell cites to various sections of the trial transcript. *See* Pet'r's Pet. 9 (citing trial transcript.). Some of these portions of the transcript contain Powers' statements on cross-examination concerning when she noticed the three men at her door and the fact that Mitchell went up the stairs behind her and asked her if she was "willing to face" whoever had said Powers was selling drugs for

another gang. *See* Resp't's Answer, Ex. Q, S-89, S-94. Another portion of the trial transcript identified by Mitchell contains the statements on direct examination of Officer Harnedy, namely, that he responded to a call of a man shot and spoke to a visibly shaken Powers at the scene of the crime. *See id.*, Ex. Q, S.139–S.141. The last portion of the transcript identified by Mitchell is Officer Harnedy's statements on cross-examination, notably that Powers told him none of the men ever threatened to shoot her. *See id.*, Ex. Q, S.155.

But reviewing this record, there is nothing that establishes that Powers gave inconsistent statements or that there was something "inherently implausible" about her account. *Navarro*, 2014 WL 7476218, at *7. Indeed, this testimony goes to Powers' credibility, demeanor, and her interpretation of Mitchell's statements and actions in the moment. And this Court is mindful that a "jury's credibility determination 'commands great deference.'" *Id.* at *7 (quoting and citing *McFowler*, 349 F.3d at 456 ("The finder of fact is uniquely situated to observe how well a witness's demeanor withstands the rigors of cross-examination and the exposure of inaccuracies and inconsistencies in her story."). Even if the Illinois appellate court had heard and addressed this argument, the testimony identified by Mitchell does not convince the Court that no reasonable jury could give credit to Powers based on the inconsistencies he identifies. Accordingly, Claim One does not constitute grounds for granting the writ.

### B.     Claim Two

Mitchell claims that the trial court erred by giving the jury instruction on the meaning of "dwelling place" for a home invasion charge that did not come from the Illinois Pattern Jury Instructions. Before considering the merits of a habeas petition, however, the Court must ensure that the petitioner has exhausted all available remedies in state court and avoided procedural default during the state court proceedings. 28 U.S.C. § 2254(b)(1)(A); *see Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). A claim is procedurally defaulted if a habeas petitioner failed to assert his federal claim at each level of state court review. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). A claim is also procedurally defaulted based on the independent and adequate state ground doctrine "when a state court [has] declined to address a prisoner's federal claims because the prisoner [has] failed to meet a state procedural requirement." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).

Claim Two is procedurally defaulted because the Illinois appellate court on direct review resolved the claim on an independent and adequate state law ground: forfeiture. As noted, "a federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

The Illinois appellate court, citing *People v. Curtis*, 820 N.E.2d 1116, 1126 (Ill. App. 2004), found that Mitchell had forfeited his argument on the "dwelling place" instruction because Mitchell's contention on appeal — that the trial court incorrectly answered a question of *fact* for the jury — conflicted with his defense counsel's argument at trial — that supplying the jury with the definition of dwelling place would be answering a question of *law*. *See* Resp't's Answer, Ex. A, 12 ("[D]efendant is technically barred from now asserting that the jury inquiry presented a question of fact."). The trial court relied on *Curtis* for the state law proposition that a party forfeits an argument on appeal by not presenting it at trial. *See Curtis*, 820 N.E.2d at 1126 (citing *People v. Thompson*, 787 N.E.2d 858, 865 (2003) (noting a party "waived [their] argument by failing to raise it in the trial court"). Consequently, the Illinois appellate court's determination rested on an independent and adequate state ground.

The Illinois appellate court's alternative discussion of the claim on the merits does not ameliorate the procedural default. The Seventh Circuit has rejected the argument that "the presence of any discussion of the merits indicates that the state court did not base its ruling on independent state law grounds." *Smith*, 598 F.3d at 386 (noting "that is not the law"). "Only when the state court's analysis of state law and federal law grounds are interwoven, to such an extent that we cannot clearly determine whether the state court opinion relies on state law grounds, do we set aside the state law grounds and address the issue." *Id.* While the appellate court went on to discuss the merits of Mitchell's arguments, it did so "despite defendant's

forfeiture." *See* Resp't's Answer, Ex. A, 13. And the Illinois appellate court came to a clear holding on forfeiture, concluding after its analysis under *Curtis* that "[t]herefore, defendant is technically barred from now asserting that the jury inquiry presented a question of fact." *See id.*, Ex. A., 12. Consequently, it is clear that the Illinois appellate court decision on the "dwelling place" instruction argument rested on the independent and adequate state law ground of forfeiture, and Claim Two is procedurally barred.

### C.    Claim Three

Mitchell also claims that the trial court erred by applying a firearm enhancement in sentencing. The crux of his argument is that, because he was only convicted on an accountability theory of murder, the jury could not have found the facts necessary for the sentencing enhancement to apply. *See* Pet'r's Pet. 11–12 (Grounds Three and Four). Claim Three is not cognizable here because it does not present a federal constitutional claim. "[E]rrors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004). Mitchell's petition only argues that the trial court misapplied 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(d)(i), a state sentencing statute, when it sentenced Mitchell. *See* Pet'r's Pet. 6. This constitutes an argument under state law because "an error in the interpretation of . . . the application of state sentencing rules does not present a cognizable claim for federal habeas relief." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *see also U.S. ex rel. Keller v. McCann*, 553 F. Supp. 2d

1002, 1012 (N.D. Ill. 2008) (claims challenging the application of Illinois' firearm sentencing enhancement under state law not cognizable).

This, of course, is not the end of the matter because "a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial." *Perruquet*, 390 F.3d at 511. However, even when Mitchell's petition is construed liberally, *see Lieberman v. Thomas*, 505 F.3d 665, 671 (7th Cir. 2007) (habeas petitioner's *pro se* filings were entitled to liberal construction), it cannot be said to present a federal constitutional argument because it does not explain in any detail how the sentencing enhancement violated his federal constitutional rights to a fair trial.

Although Mitchell's petition mentions that the alleged misapplication of the state sentencing enhancement was "fundamentally unfair," *see* Pet'r's Pet. 11, this is not enough to recast this issue as a due process claim under federal law. *See Perruquet*, 390 F.3d at (to make out a due process claim, "the basic rationale of [Petitioner's] due process argument [must be] readily discernible"). Likewise, simply titling the claim in his petition as a due process violation under the Fourteenth Amendment, without further discussion, *see* Pet'r's Pet. 6, does not properly invoke due process. *See Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("'Due process' is such a ductile concept that phrase-dropping is the equivalent of no argument at all."). And "unlike the petitioner in *Perruquet*, [Petitioner] does not 'cite his constitutional right to a fair trial.'" *United States ex rel. White v. Atchison*, No. 12 C 7347, 2013 WL 6355476, at *6 (N.D. Ill. Dec. 4,

2013). Claim Three therefore presents only an argument about State law and is not cognizable on federal habeas review.

Lastly, for completeness, even if the Court could construe Mitchell's passing references to due process as impliedly raising a due process claim based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), this claim is unpersuasive. First, although Mitchell raised *Apprendi* before the state courts, he does not invoke *Apprendi* here. In any event, *Apprendi* would not apply. After applying the enhancement, the state trial court gave Mitchell a total sentence of sixty years. *See People v. Mitchell*, No. 1-05-1114, 1 (Ill. App. Ct. 2007). The fifteen-year enhancement did not increase his sentence beyond the sixty-year statutory maximum for first degree murder applicable at the time. *See* 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(a) ("a term shall be not less than 20 years and not more than 60 years") (effective January 1, 2006 to May 31, 2009); *see also U.S. ex rel. Bivens v. Sigler*, No. 06 C 0584, 2006 WL 1308619, at *5 (N.D. Ill. May 10, 2006) (finding procedurally defaulted *Apprendi* argument nonetheless meritless) (citing *Apprendi,* 530 U.S. at 490 ("any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt")).

## D.    Claim Four

Mitchell's fourth claim is procedurally defaulted because it was not subjected to one full round of state court review. Mitchell never argued that his trial counsel was ineffective for failing to move to suppress his own statements to officers in violation of his *Miranda* rights or to preserve a sufficiency of evidence claim for

appeal on direct appeal. He did raise these claims in the first round of his post-conviction proceedings, but did not pursue them subsequently in the state appellate court. Consequently, Claim Four is procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (habeas claim must be raised in one complete round of state court review, including the state appellate court).

### E.    Claim Five

Lastly, Mitchell claims he is actually innocent. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Milone v. Camp*, 22 F.3d 693, 699–700 (7th Cir. 1994) (unless a prisoner is facing a sentence of death, "actual innocence" is not a cognizable claim). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." *Herrera*, 506 U.S. at 400. Consequently, Claim Five is noncognizable as a basis to grant the writ.[6] *See, e.g.*, *U.S. ex rel. Williams v. Hulick*, No. 07 C 0056, 2010 WL 1292450, at *5 (N.D. Ill. Mar. 25, 2010). Notwithstanding this, the Court will

---

[6]    Some courts have noted a tension between the Supreme Court's rulings in *Herrera* and a subsequent case, *In Re Davis*, 557 U.S. 952 (2011), in which "the Supreme Court remanded a habeas petition to the Southern District of Georgia for a hearing to determine 'whether evidence that could not have been obtained at the time of trial clearly establishes petitioner's innocence.'" *Mulero v. Thompson*, 751 F. Supp. 2d 1009, 1027 (N.D. Ill. 2010), *aff'd*, 668 F.3d 529 (7th Cir. 2012) (quoting *In Re Davis*, 557 U.S. at 952). Even if the Court were to hold that *In Re Davis* impliedly altered the holding in *Herrera*, the standard for a free-standing claim of actual innocence would remain "extraordinarily high," *see Mulero*, 751 F. Supp. 2d at 1027, and Mitchell would not meet it based on Powers' recantation, as explained below.

consider Mitchell's claim of actual innocence below as a potential cause to excuse Mitchell's procedural default.

### Cause To Excuse Procedural Defaults

As noted above, Claims Two and Four are procedurally defaulted. But Mitchell could still proceed if he establishes cause and prejudice to excuse his procedural defaults. If a claim is procedurally defaulted, a petitioner must establish that: (1) good cause exists for the default and actual prejudice was suffered as a result or (2) the default would lead to a "fundamental miscarriage of justice." *Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011); *see Bousley v. United States*, 523 U.S. 614, 620 (1998).[7]

Mitchell does not offer or argue that any cause excuses his default. Therefore, Mitchell offers no argument under the "cause and prejudice" exception. Mitchell does, however, advance the claim that he is actually innocent, a claim that the Court construes to be an argument under the "fundamental miscarriage of justice" exception. "The fundamental miscarriage of justice exception requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Smith*, 598 F.3d at 387 (internal

---

[7]     "[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). Thus, "a claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an 'attractive power for those who like difficult puzzles.'" *Lee*, 328 F.3d at 901 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 458 (2000)) (Breyer, J., concurring).

quotations omitted). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 387–88 (quoting *Schlup*, 513 U.S. at 327).

To establish his actual innocence, Mitchell relies on an affidavit of Ninner Powers in which she recants portion of her prior testimony. But the affidavit is not enough to "show that it is more likely that not that but for the alleged constitutional error, no reasonable fact finder would have found him guilty[.]" *Lesure v. Atchison*, 891 F. Supp. 2d 920, 926 (N.D. Ill. 2012). In her affidavit, Powers recants her testimony that Mitchell used force to enter the hallway of her apartment complex, avers that she does not hold Mitchell responsible for the death of her husband, and believes that Mitchell's presence alone should not be enough for a finding of guilt. *See* Resp't's Answer, Ex. H, Powers Aff. Additionally, she believes he showed no action to encourage or incite the shooting. *See id.* Powers does not recant her testimony that Mitchell was there or that he fled the scene. And her affidavit does not undermine the other evidence establishing that Mitchell knew Peoples was armed, that he went to the apartment to recover drug money, and that he believed Powers and Campbell were working for a rival gang.

Mitchell's evidence shows, at best, that "it would be possible for a juror to find him not guilty, not that it would be impossible for any reasonable juror to find him guilty, so we cannot excuse his procedural default on fundamental miscarriage of justice grounds." *U.S. ex rel. Lucas v. Welborn*, 89 F. Supp. 2d 976, 983 (N.D. Ill.

1999) (examining recantation affidavits). Consequently, Powers' affidavit is not enough to meet the high burden to establish a "fundamental miscarriage of justice" that would excuse Mitchell's procedural defaults.

## Certificate of Appealability

Under Rule 11 of the Rules Governing § 2254 Cases, this Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. Issuing a certificate is appropriate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying constitutional claim are debatable. *Id.* at 484.

Here Mitchell's Claim One is plainly meritless. The Illinois appellate court correctly identified the controlling legal principles from *Jackson*, correctly applied them, and Mitchell makes no argument that the court did so contrary to a factually similar Supreme Court case. It is beyond debate that Claims Two and Four are procedurally defaulted. No reasonable jurist would find that forfeiture was not an independent and adequate state ground to address Mitchell's jury instruction argument. And no reasonable jurist would debate that Mitchell failed to present his ineffective assistance of counsel claims through one full round of state court review given that he abandoned these claims in the Illinois appellate court. Lastly, Claims

Three and Five are plainly deficient. Claim Three invokes only state law grounds, and Claim Five is not a free-standing habeas claim. Finally, as described above, no reasonable jurist would find that Powers' affidavit establishes Mitchell's innocence so that the fundamental miscarriage of justice exception to procedural default would apply. Consequently, the Court declines to issue a Certificate of Appealability.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court denies Mitchell's petition for writ of habeas corpus [6] and declines to issue a Certificate of Appealability. Civil case terminated.

**SO ORDERED**                     **ENTERED**     **9/29/15**

_____
**John Z. Lee**
**United States District Judge**